United States District Court
Southern District of Texas
FILED

SEP 0 8 2014

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JOSE A. CAVAZOS<br>　　　Plaintiff, | §<br>§<br>§<br>§ | |
| vs. | §<br>§ | CAUSE NO. **M-14-787** _____ |
| PATRICK R. DONAHUE,<br>UNITED STATES<br>POSTMASTER GENERAL,<br>　　　Defendant. | §<br>§<br>§<br>§ | |

## PLAINTIFF'S ORIGINAL COMPLAINT

JOSE A. CAVAZOS, Plaintiff herein, files this his Original Complaint, complaining of PATRICK R. DONAHUE, Postmaster General, United States Postal Service, Defendant herein, and in support thereof would show the Court as follows:

### I. JURISDICTION and VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 USC §§ 2000e et seq.) Employment Discrimination on the basis of age; Age in Employment Discrimination Act of 1967 ("ADEA); harassment, hostile work environment and retaliation for engaging in protected activity; and discrimination on the basis of the disability in violation of the Americans with Disabilities Act of 1990, as amended.

2. Jurisdiction in this Court is proper under 28 U.S.C. § 1331.

3. Venue in this Court is proper under 28 U.S.C. § 1391 (b) and (c) because the Defendant is a Federal Agency that is subject to personal jurisdiction in this judicial district and because this judicial district is where a substantial part of the events or

1

omissions giving rise to the asserted claims occurred.

## II. PARTIES

4. Plaintiff is a male, Mexican-American Veteran of the Gulf War era and served in the U.S. Navy. Plaintiff was forty-one (41) years old at the time of filing his discrimination claim.

5. Defendant is a governmental agency with offices in Hidalgo County, Texas, and operating its mail business within this judicial district.

## III. CONDITIONS PRECEDENT TO SUIT

6. Plaintiff began employment with Defendant on October 11, 1997.

7. Plaintiff has a Veteran service related injury to his right testicle diagnosed as chronic Epididymitis and Orchitis which caused severe pain and swelling when constantly lifting, pushing, pulling and handling heavy items.

8. Plaintiff had a standing Family and Medical Leave Act (FMLA) form with Defendant to take time off to recuperate from the pain to his groin area, whenever he needed.

9. Plaintiff asserts that after fifteen (15) years of lifting up to seventy (70) pounds of mail packages; and pushing and pulling; the physical demands aggravated his testicle injury. Plaintiff asserts he had worked performing constant lifting, pushing, pulling and handling heavy items for eight hours a day.

10. Plaintiff asserts as a Mail Processing Clerk he would only be required to work three or four hours of lifting, pushing, pulling and handling heavy items in an eight hour work day.

11. On August 27, 2011, Plaintiff voluntarily transferred to Parcels Breakdown-Tour I. Plaintiff asserts he did not request light duty nor accommodations; and only sought the transfer to limit any further aggravation of his right testicle injury.

12. Plaintiff's responsibilities were: sorting mail, pitching and handling of packages and magazine bundles from bulk mail containers into smaller designated mail hampers containers and other duties assigned. Plaintiff's salary at this time a Level-6 and earning $53,102 a year.

13. Plaintiff's Supervisor was Linda Vonville, an Anglo female.

14. Plaintiff asserts from his initial transfer to Vonville's unit, Vonville singled him out and on numerous occasions scrutinized Plaintiff's work performance and attendance (associated to his FMLA absences). Plaintiff contends he is a Disabled Veteran and could not perform as quick as other Postal Workers. Vonville would come to his work station and yell at him, "are you done Joe". Plaintiff contends he was humiliated in front of his peers.

15. Plaintiff asserts on numerous occasions, Vonville, would yell, "Hurry up Joe we don't have all day". At other times Vonville would stand in front of Plaintiff in attempts to intimidate and harass him into working faster.

16. Plaintiff asserts when Vonville would harass him regarding his absences; Plaintiff would informed Vonville his absences were covered by FMLA. Vonville would often yell out, "there's no such thing as light duty around here".

17. Plaintiff contends most employees at the McAllen, Texas Post Office are of Mexican descent. Plaintiff asserts most employees on Tour I and assigned to Vonville are Postal Employees who either had limited or restricted duties due to a disability.

Plaintiff contends at the time he transferred to Vonville's unit Plaintiff had no limited nor restricted duty assignment.

18. Plaintiff asserts Vonville was extra hard on these Hispanic employees and sought to have them work harder and at a fast pace, including Plaintiff.

19. A decision by the Department of Veteran Affairs Administration dated December 14, 2012 found Plaintiff's medical condition was: mood disorder due to chronic pain (claimed as major depressive disorder with anxiety) with is currently 30 percent disabling, is increased to 70 percent effective [retroactive] February 21, 2012. This finding was associated to Plaintiff's right testicle injury.

20. Plaintiff asserts Vonville's harassment aggravated his depression and anxiety; and asserts Vonville's harassment is what led to his on-the-job injury on April 24, 2013.

21. On or about April 24, 2013, Plaintiff suffered an on the job injury. Plaintiff was diagnosed by Dr. Monzer H. Yazji as having a right elbow strain, and ordered treatment with Corticosteroid injections.

22. Plaintiff asserts Vonville was aware and had knowledge of Plaintiff's elbow injury; and on April 26, 2013 presented Vonville with PS Form CA-17. A CA-17 Form is completed by Plaintiff's doctor identifying all physical restrictions and limitations.

23. Plaintiff filed an on-the-job injury claim associated to his right elbow with the U.S. Office of Worker's Compensation Program (OWCP). Plaintiff's OWCP claim was approved, Claim No. 162207525.

24. Plaintiff asserts Vonville was accusing Plaintiff that his injury to his right elbow was "fake" and that Plaintiff was using the injury "to add on to" his disability.

25. Plaintiff asserts Vonville's actions subjected him to hostile work environment by forcing Plaintiff to sign a PS Form CA-2. This form identifies the injury as an occupational condition that occurred through time and would not allow Plaintiff time off to recuperate.

26. Plaintiff asserts that he did not and was not aware of what he was signing, the PS Form CA-2, when he was under duress and forced to sign. Plaintiff contends Vonville informed Plaintiff if he wanted treatment for the April 24, 2013 injury, Plaintiff needed to sign a PS C-2 form.

27. Plaintiff asserts Ms. Vonville should have had Plaintiff file a PS Form CA-1 and the injury to his right elbow would have been treated as a traumatic injury and would have allowed for time off for Plaintiff's right elbow injury. Plaintiff asserts Vonville intentionally misled Plaintiff for the purpose of discriminating against Plaintiff and to engage in further harassment of Plaintiff.

28. As a result of filing a PS Form C-2, OWCP would cover the treatment but would not paid for any time to recuperate. Plaintiff asserts that he had missed eighteen (18) days of work.

29. On or about July 16, 2013, Vonville finally had Plaintiff sign a PS Form 2499 for a limited Duty (Job) Offer in associated to his right elbow injury.

30. Plaintiff asserts Vonville did not place him on light duty assignment until three months after the injury to his right elbow on April 24, 2013.

31. Plaintiff asserts Defendant's modified job assignment consisted of distribution of letters, flats, packaged, lifting/carrying less than ten (10) lbs., and intermediate sitting/walking, standing and bending.

32. Plaintiff asserts Vonville was provided with monthly CA-17 forms; and the last CA-17 form was given to Vonville on July 26, 2013 which was good through August 10, 2013.

33. On or about August 5, 2013, Plaintiff was referred to specialist, Dr. James D. Key, Orthopedic Surgeon, by Dr. Yazji for further evaluation of Plaintiff's right elbow injury.

34. On or about August 9, 2013, Plaintiff asserts that Vonville in a harassing and discriminatory manner forced Plaintiff to violate his medical restrictions and his job modified offer of July 16, 2013.

35. Plaintiff asserts Vonville directed him to work in the Parcels Breakdown section which required Plaintiff to handle heavy packages, pushing and pulling heavy mail containers weighing hundreds of pounds; and moving equipment without assistance.

36. Plaintiff asserts he questioned Vonville three (3) times regarding her assignment and disclosed to Vonville that the assignment would violate his medical restrictions.

37. Plaintiff asserts he questioned Vonville whether her actions were "retaliation or what". Plaintiff asserts Vonville replied in a high tone, "[you] will work parcels".

38. Plaintiff asserts he set out to perform the tasks directed by Vonville. Plaintiff was given one (1) hour to pitch approximately 300 parcels ranging from small to medium heavy size parcels from a wire container into a corresponding city route hamper container setups. Plaintiff asserts that at about 7:15 am the pain to his right elbow was so severe that most of the parcels he was pitching were not landing correctly into the hamper containers.

6

39. Plaintiff asserts two small packages fell through the two hamper containers and landed on the floor. Plaintiff had to break the setup apart and move the two hamper containers to reach one of the packages to prevent any damage to the package. Plaintiff asserts while moving the fully loaded hamper he felt a sharp pain to his lower back. Plaintiff immediately stopped what he was doing and reported to Vonville that he was hurt and in severe pain and was leaving.

40. On or about August 10, 2013, Plaintiff was seen by Dr. James D. Key, Orthopedic Surgeon. Dr. Key's diagnosis, based on Plaintiff's job duties and physical examination, found Plaintiff suffered "a traumatic injury to right shoulder, right elbow, and lower back which is directly related to the performance of his work on August 9, 2013 when he was working in the parcels break-down section and was pitching parcels from a hamper container into the corresponding city routes hamper containers".

41. On August 20, 2013 Plaintiff submitted a PS Form CA-17, CA-1 and Plaintiff's statement regarding the incident of August 9, 2013 to Vonville. Dr. James D. Key, Orthopedic Surgeon placed Plaintiff on off work duty status.

42. The August 20, 2014 PS Form CA-17 signed by doctor Dr. Key, specifically noted the following restrictions on Plaintiff: sitting-two hours a day; standing-six hours a day; bending and stooping-three hours a day; twisting-five hours a day; pulling and pushing-two hours a day; simple grasping-eight hours a day; fine manipulation-eight hours a day; and reaching above shoulder-four hours a day. Plaintiff asserts these restrictions and hours provided were "intermittent" and not meaning he could perform with these restrictions on a continuous basis.

43. Plaintiff filed an OWCP claim, No. 162211553 related to the on-the-job injuries of August 9, 2013. The OWCP approved/granted Plaintiff's claim citing the on-the-job injury resulted in Plaintiff's suffering a right shoulder sprain and strain; right elbow sprain, lumbar sprain and lumbar disc displacement.

44. From August 9, 2013, to the present date, Plaintiff has been off work pending an approval by OWCP for surgery needed for Plaintiff's lumbar disc displacement. Plaintiff began receiving Continuation of Pay (COP) on August 24, 2013 to the present date.

45. On or about September 19, 2013, Plaintiff reported to Lt. Jasso, Hidalgo County Sheriff's Department (Case No. 13-37191) that a camera had been placed on a power pole directly pointed at his home. Plaintiff reasonably believes an investigation is still on-going on this reported incident.

46. On or about September 20, 2013, Plaintiff was informed by Senior Chief Steward, Ernie Olivares informed Plaintiff that Vonville was engaged in an attempt to terminate Plaintiff. Olivares informed Plaintiff that he heard a conversation between Vonville and Postmaster Secretary Sonia Drewmont in which Vonville informed Drewmont that Plaintiff had already been reported to the Office of Inspector General (OIG) for fraud.

47. Plaintiff reasonably believes the camera placed at the light pole aimed at his house was placed there by Defendant,

48. Plaintiff asserts his on the job injuries are a result of Vonville's harassment and being subjected to hostile work environment.

49. Plaintiff reasonably believes Vonville engaged in race, national origin, gender, and disability discrimination.

50. Plaintiff reasonably believes Vonville engaged in retaliation against Plaintiff after making protected disclosures of being harassed to his Union Steward.

51. Plaintiff asserts that as a result of Vonville's discriminatory conduct, Plaintiff's condition of anxiety and depression was aggravated.

52. Plaintiff asserts that as a result of Vonville's discriminatory conduct Plaintiff has suffered potential permanent medical disability.

54. Plaintiff filed an internal EEO claim with Defendant on October 25, 2013.

55. Plaintiff's EEO discrimination claim noted "disability" as a claim.

56. Plaintiff's EEO Affidavit (obtained by the Defendant through the process of investigation of Plaintiff's claims) disclose being harassed and retaliated against.

57. Plaintiff asserts it was the Defendant's Contracted EEO Investigator responsibility to inform Plaintiff of the issues he was disclosing in his EEO Affidavit and present Plaintiff with a Supplemental Affidavit to address these "new" claims.

58. Plaintiff filed a timely request for Hearing with Equal Employment Opportunity Commission (EEOC).

59. On or about March 3, 2014, Plaintiff filed a *Motion to Include Claims and Amend Claims before the Commission; and Motion to Remand EEO Investigative File for Further Investigation*. Plaintiff asserts he sought to include: Age; Race (Mexican-American); National Origin (Mexican); Gender; and Retaliation as part of his claims.

60. Plaintiff asserts claims of harassment, age and hostile work environment were addressed in his Motion dated March 3, 2014, to the EEOC Administrative Judge (EEOC AJ).

61. Plaintiff's Motion dated March 3, 2014 to the EEOC AJ addressed the lack of sufficiency and bias EEO investigation conducted. Plaintiff asserts: the only two Affidavits in the Defendant's EEO Investigative File were Plaintiff's and Vonville's. Plaintiff asserts even though his EEO Affidavit disclosed names of witnesses, no witnesses were contacted by Defendant's EEO Investigator to obtain their statements.

62. On or about March 6, 2014, Plaintiff filed a union grievance against Vonville based on harassment. Plaintiff asserts he had complained of Vonville's harassment to Senior Chief Steward Ernie Olivares for at least a year. Plaintiff asserts Olivares would discuss my complaints of harassment to Vonville and requested that she cease the harassment.

63. Plaintiff asserts Vonville instead of ceasing her harassment, Vonville retaliated and would scrutinize his work performance and attendance (FMLA absences). Moreover, Vonville would erase his clock rings for hours Plaintiff worked; and directed Plaintiff to cease attending a training for the purpose of denying Plaintiff to be compensated.

64. Plaintiff has not heard of the progress of his union grievance, possibly due to the fact he has not returned from work.

65. On or about March 12, 2014, Plaintiff contacted the EEOC AJ's office and requested status of his Motion dated March 3, 2014. Ms. Rose Mosely conveyed she would pass on the message to the EEOC AJ.

66. Plaintiff filed a *Motion to Dismiss Hearing Request and Request a Final Agency Decision (FAD)* on April 23, 2014. Plaintiff's Motion to Dismiss argued that the "amended claims" were interpreted as being "accepted" by the Commission because the EEOC AJ had not responded to Plaintiff's Motion dated March 3, 2014.

67. On April 23, 2014, the Defendant/the Agency responded to Plaintiff's Motion to Dismiss dated April 24, 2014. Plaintiff asserts Defendant/the Agency disclosed it had not received Plaintiff's Motion to Amend dated March 3, 2014.

68. Plaintiff's reply dated April 24, 2014 to the Defendant's response dated April 23, 2014 to the EEOC AJ; informed the EEOC AJ that Plaintiff would be unopposed in allowing the Defendant to reply to Plaintiff's Motion to Amend dated March 3, 2014.

69. On or about April 29, 2014, the EEOC AJ issued an Order finding the Commission nor Agency (Defendant), received the Plaintiff's Motion to Amend dated March 3, 2014; and granted Plaintiff's Motion to Dismiss Hearing Request and Request for a Final Agency Decision.

70. Plaintiff asserts the EEOC AJ had Plaintiff's Motion to Dismiss dated April 24, 2014; and Plaintiff's reply dated April 24, 2014 not opposing Defendant/the Agency more time to respond to its Motion to Amend dated March 3, 2014 in its possession at least five (5) days prior to issuing the EEOC's Order dated April 29, 2014.

71. Plaintiff received the Defendant's Final Agency Decision on June 13, 2014 and timely files this lawsuit within the ninety (90) day time period against the Defendant.

### IV. CAUSES OF ACTION

A. Title VII employment discrimination

73. The conduct of Defendant constitutes a violation of the Equal Employment

Opportunity Acts prohibitions of discrimination based upon Race (Mexican); National Origin (Mexican-American); gender (male); 42 U.S.C. '2000e. et seq.

74. This violation caused Plaintiff to suffer damages.

B. Retaliation and Hostile Work Environment.

75. Defendant has participated in retaliation and conduct creating a hostile work environment to Plaintiff, causing him economic and other damages.

C. Harassment

76. Defendant has participated in harassment against Plaintiff, causing him economic and other damages.

D. Age and Disability

77. Defendant has participated in wrongful employment actions against Plaintiff due to his age and disability causing him economic and other damages

## V. DAMAGES

78. Defendant's acts and omissions have caused Plaintiff to suffer damages including past and future lost earnings (including back pay and front pay), past and future injury to reputation, and past and future mental anguish.

79. Plaintiff seeks recovery of these damages from Defendant.

## VI. ATTORNEY FEES

80. Defendant's acts and omissions have caused Plaintiff to incur attorney's fees and court costs. Plaintiff is entitled to an award of attorney's fees and costs under Title VII. 42 U.S. C. § 2000e-5(K). Plaintiff seeks recovery from Defendants of all attorney fees and court costs through judgment in this court with additional contingent amounts in the event of post judgment and appellate proceedings. All conditions precedent to the

recovery of attorney fees have been satisfied.

## VII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant be cited to appear and answer herein to Plaintiff's Original Complaint, and that upon final trial, this court enter a judgment awarding the Plaintiff all of the aforementioned damages, attorney fees, costs of court, and prejudgment and post-judgment interest. Plaintiff also asks for such other and further relief, whether legal or equitable, to which Plaintiff may be justly entitled.

Plaintiff requests a jury trial.

Respectfully Submitted,

JOSE A. CAVAZOS, Pro Se
15423 Depot Rd.
Edinburg, Texas 78541
Tele.956-279-1128
Email-jacavazosg@att.net

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JOSE A. CAVAZOS

### DEFENDANTS
PATRICK R. DONAHUE, United States Postmaster General

**(b)** County of Residence of First Listed Plaintiff   **Hildago County, Texas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **Washington, DC**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Sec. 2000e et seq.; American Disability Act

Brief description of cause:
Age discrimination, retaliation, harassment and hostile work environment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

```
Court Name: USDC - SDTX
Division: 7
Receipt Number: MCA009637
Cashier ID: marylouc
Transaction Date: 09/08/2014
Payer Name: JOSE A. CAVAZOS
--------------------------------
CIVIL FILING FEE
 For: JOSE A. CAVAZOS
 Case/Party: D-TXS-7-14-CV-000787-001
 Amount:        $400.00
--------------------------------
CHECK
 Remitter: JOSE A. CAVAZOS
 Check/Money Order Num: 2847
 Amt Tendered: $400.00
--------------------------------
Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00


A fee of $53.00 will be charged on
any returned negotiable instrument.
```