United States District Court
Southern District of Texas
**ENTERED**
July 08, 2016
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| JOSE A. CAVAZOS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:14-CV-787 |
| | § | |
| PATRICK R. DONAHUE, | § | |
| | § | |
| Defendant. | § | |

## OPINION & ORDER

Pending before the Court is a motion for summary judgment filed by Megan J. Brennan, Postmaster General of the United States Postal Service ("Defendant").[1] Pursuant to the local rules, a response to the motion was due from Jose A. Cavazos ("Plaintiff") on January 8, 2016.[2] Plaintiff filed a motion to extend the deadline to respond and subsequently filed a response.[3] Defendant replied.[4] After considering the motions, response, submitted evidence, and applicable law, the motion for summary judgment is **GRANTED**.

### I.    Motion for Extension of Time

First, the Court must address Plaintiff's motion for extension of time to respond to Defendant's motion for summary judgment.[5] A timely response from Plaintiff was due on January 8, 2016. Plaintiff filed his unopposed motion for an extension of time on December 22, 2015 and requested the Court to extend the response deadline to January 22, 2016.[6] As cause for his request, Plaintiff's counsel explained that "due to the extensive nature of said motion for

---

[1] Dkt. No. 29.
[2] *See* Local Rule 7.3 of the *Local Rules of the United States District Court for the Southern District of Texas*.
[3] Dkt. Nos. 30-31.
[4] Dkt. No. 32.
[5] Dkt. No. 30.
[6] *Id.* at ¶ 9.

summary judgment, and the undersigned's litigation schedule, the undersigned has not and will not be able to completely and thoroughly review said motion for summary judgment, and the applicable case law before the deadline."[7]

Under Federal Rule of Civil Procedure 6(b), the Court applies the "good cause" standard to motions for extensions of time made before the deadline for the relevant act, a standard lenient by comparison to the "excusable neglect" standard applied to such motions made after the deadline. Because this request was made before the deadline, the Court evaluates the motion under a "good cause" standard. Although the Court finds Plaintiff's explanation insufficient, the requested extension will not prejudice Defendant, who is unopposed, and Plaintiff filed his response by the date requested. Accordingly, the Court **GRANTS** the requested extension and considers the response in its analysis.

## II.    Background

This is an employment discrimination case brought by Plaintiff pursuant to 29 U.S.C. §701, *et seq.* ("the Rehabilitation Act").[8] Plaintiff is an employee of the United States Postal Service and claims that Defendant discriminated against him due to a disability he developed from an injury at work.[9] Plaintiff started working for the postal service in 1997.[10] Sometime during August 2011, Plaintiff voluntarily transferred to become a manual distribution clerk.[11] His responsibilities as a manual distribution clerk included sorting letters, packages and parcels, among other items.[12] During this time, his supervisor was Linda Vonville ("Vonville").[13] On

---

[7] *Id.* at ¶ 8.
[8] Dkt. No. 39 ("Plaintiff's Second Amended Complaint") at ¶ 1.
[9] In 1994 while Plaintiff served in the United States Navy, he injured his right testicle. However, this physical injury and Plaintiff's mood disorder (post-traumatic stress disorder) are not the basis of this disability discrimination lawsuit. *See* Dkt. No. 29, Exh. A ("Cavazos Deposition") at pp. 13-15.
[10] Cavazos Deposition at p. 19, lines 7-8.
[11] *Id.* at pp. 38-39.
[12] *Id.* at p. 39, lines 2-7.
[13] *Id.* at p. 44, line 15.

April 24, 2013, Plaintiff injured his right elbow and forearm while lifting a brick sized package.[14] One day later, Plaintiff visited Dr. Monzer Yazji who diagnosed the injury to his right elbow/forearm as a sprain/strain.[15] Plaintiff asserts that this injury to his right elbow/forearm caused him to be disabled.[16] When Plaintiff returned to work on April 25, 2013, he returned with a medical restriction from his doctor. [17] Plaintiff requested to be placed on limited duty,[18] but claims his supervisor Vonville "did not want to respect" his requests to refrain from performing heavy lifting and bending.[19] Plaintiff was eventually placed on limited duty status in July 2013.[20] As part of his modified job assignment,[21] Plaintiff was not allowed to lift packages weighing more than ten pounds.[22]

On August 9, 2013, Vonville instructed Plaintiff to work in a parcels breakdown section,[23] which required him to handle packages of all sizes and weights[24] and distribute them into individual containers.[25] While doing this, two packages fell between two bins.[26] Plaintiff sustained a second injury when he attempted to pick up these packages from the ground. Plaintiff "felt a sharp pain to [his] left lower back"[27] after moving the bins to create space so that he could reach down and retrieve the fallen parcels.[28] The one document Plaintiff retrieved was "flimsy" and so Plaintiff believes it was not "the weight of that package that caused the injury" but rather

---

[14] *Id.* at pp. 45-46.
[15] *Id.* at p. 48.
[16] *Id.* at p. 49, line 25.
[17] *Id.* at p. 51, lines 9-14.
[18] *Id.* at p. 50, line 21.
[19] *Id.* at lines 23-25.
[20] *Id.* at p. 51, lines 15-18. *See id.* at p. 54-58 for details on limitations.
[21] Dkt. No. 29, Attachment 2 at pp. 1-2 ("Offer of Modified Assignment").
[22] *See id.*
[23] Cavazos Deposition at p. 61, lines 12-13.
[24] *Id.* at p. 63, line 18.
[25] *Id.* at p. 65, lines 5-11.
[26] *Id.* at lines 11-12.
[27] *Id.* at p. 68, lines 1-2.
[28] *Id.* at p. 69, lines 7-10; line 25.

3 / 16

"the process of bending down, either pushing the carts apart or bending down."[29] Shortly after, Plaintiff informed Vonville of his pain, clocked out and left work.[30] He went to see a doctor that day.[31]

Since that time, Plaintiff has been off work and receives worker's compensation benefits.[32] The medical bills associated with the April 24, 2013 and August 29, 2013 injuries have been paid for by the Department of Labor under the worker's compensation program.[33] Additionally, Plaintiff had surgery on his right elbow/forearm in May 2015.[34]

*a. Procedural*

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 25, 2013,[35] and received a final agency decision on June 13, 2014.[36] On September 8, 2014, Plaintiff filed suit in this Court *pro se*[37] against Defendant asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"),[38] the Age Discrimination in Employment Act of 1967 ("ADEA"),[39] and the American with Disabilities Act of 1990 ("ADA").[40] On January 30, 2015, Defendant filed a motion to dismiss requesting the Court dismiss all claims in Plaintiff's *pro se* complaint.[41] On July 31, 2015, Plaintiff filed a motion for

---

[29] *Id.* at p. 70, lines 11-21.
[30] *Id.* at p. 74.
[31] *Id.*
[32] *Id.* at pp. 77-79.
[33] *Id.* at p. 83.
[34] *Id.* at p. 86.
[35] Plaintiff's Second Amended Complaint at ¶43.
[36] *Id.* at ¶46.
[37] Dkt. No. 1.
[38] 42 U.S.C.A. § 2000e et seq. (West).
[39] 29 U.S.C.A. § 621 et seq. (West).
[40] 2 U.S.C.A. § 12101 et seq. (West).
[41] Dkt. No. 14.

leave to file his first amended complaint.[42] The Court ruled on both motions on September 1, 2015.[43]

First, the Court partially granted Defendant's motion to dismiss by finding Plaintiff failed to state a claim under Title VII and the ADEA.[44] Next, the Court granted Plaintiff's motion for leave to amend his complaint for the sole purpose of reasserting his disability claim under the Rehabilitation Act,[45] and not under the ADEA as Plaintiff originally pleaded.[46] Having found Plaintiff's original complaint insufficient as to the non-disability claims, the Court denied as moot Plaintiff's motion for leave to amend the remainder of his claims.[47] The Court ordered Plaintiff to file an amended pleading by September 15, 2015.[48] On September 15, 2015, Plaintiff filed his second motion for leave to file an amended complaint,[49] and attached his second amended complaint with the motion.[50] The Court denied this motion because it already expressly granted leave to Plaintiff to file an amended complaint.[51] Thus, the second amended complaint is the live pleading in this case.[52]

In his live pleading, Plaintiff alleges that he is a disabled[53] veteran[54] who was subjected to "wrongful employment actions" based on his disability while employed by the United States Postal Service.[55] Plaintiff does not identify the "wrongful employment actions" committed but alleges broadly that as a "result of Vonville's discriminatory conduct [he] suffered potential

---

[42] Dkt. No. 24.
[43] Dkt. Nos. 26 and 27.
[44] *See* Dkt. No. 26.
[45] Dkt. No. 27; *see also* Dkt. No. 26 at p. 20.
[46] *See* Dkt. No. 1.
[47] *See* Dkt. No. 26.
[48] Dkt. No. 26.
[49] Dkt. No. 28.
[50] *Id.*, Attachment 1.
[51] Dkt. No. 35.
[52] *Id.*; *see* Dkt. No. 39 (Plaintiff's Second Amended Complaint).
[53] Plaintiff's Second Amended Complaint at ¶ 7; ¶ 47.
[54] *Id.* at ¶ 4; ¶ 7.
[55] *Id.* at ¶ 47.

permanent medical disability."[56] Plaintiff claims that on August 8, 2013, Vonville forced him to violate his medical restrictions by directing Plaintiff to work in the parcels breakdown section requiring him to handle heavy packages, push and pull heavy mail containers and move equipment without assistance.[57] More generally, Plaintiff alleges "Vonville singled [him] out and on numerous occasions scrutinized [his] work performance and attendance [coming to his] work station and yell at him, 'are you done Joe.'"[58] Plaintiff also alleges that Vonville would humiliate, harass and intimidate him.[59]

The Court now turns to the pending motion for summary judgment and related matters.

## III.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[60]   A fact is "material" if its resolution could affect the outcome of the action,[61] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[62]   As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[63]

On a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[64] In this showing, "bald assertions of ultimate fact" are insufficient.[65]   Absent a sufficient showing, summary judgment is not warranted, the analysis

---

[56] *Id.* at ¶ 43.
[57] *Id.* at ¶ 30.
[58] *Id.* at ¶ 14.
[59] *Id.* at ¶¶ 14-16.
[60] FED. R. CIV. P. 56(a).
[61] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)(internal quotation marks and citation omitted).
[62] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)(citation omitted).
[63] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[64] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[65] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978)(citation omitted).

is ended, and the non-movant need not defend the motion.[66]  On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[67]  If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[68]  This demonstration must specifically indicate facts and their significance,[69] and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[70]

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[71]  Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[72]  Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[73]  Parties may cite to any part of the record, or bring evidence in the motion and response.[74]  By either method, parties need not proffer evidence in a form admissible

---

[66] *See Celotex Corp.*, 477 U.S. at 323.
[67] *See id.* at 323-25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995).
[68] *See id.*
[69] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[70] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008)(citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[71] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)(citations omitted).
[72] *See id.*
[73] *See* FED.R.CIV. P. 56(e).
[74] *See* FED. R. CIV. P. 56(c).

at trial,[75] but must proffer evidence substantively admissible at trial.[76] However, allegations set out in pleadings are not evidence.[77]

  *i. Summary Judgment Evidence and Objections*

  Defendant proffers the transcript from the oral deposition of Plaintiff along with its supporting exhibits.[78] To support his position, Plaintiff proffers (1) an investigative report prepared for the Equal Employment Opportunity by J. Stan Pullen;[79] (2) pictures of work related equipment;[80] (3) copies of Plaintiff's medical records and clinical evaluations;[81] (4) a copy of an excerpt from the Listing of Impairments found in the Code of Federal Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1, Part B);[82] and a copy of Plaintiff's duty status report and modified assignment forms.[83]

  Under Federal Rule of Civil Procedure 56(c)(2), a party may object to material that cannot be presented in a form that would be admissible in evidence. Here, Defendant objects to all of Plaintiff's exhibits as inadmissible.[84] Plaintiff failed to respond to the objections. The Court has reviewed Plaintiff's exhibits and finds that they are all unauthenticated and unverified documents. As such, they are not proper summary judgment evidence.[85] Accordingly, the Court **SUSTAINS** Defendant's objections.

---

[75] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

[76] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").

[77] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996) ("[P]leadings are not summary judgment evidence.")

[78] Cavazos Deposition; Offer of Modified Assignment; Dkt. No. 29, Attachments 2, pp. 3-5 ("Pictures").

[79] Dkt. No. 31, Exh. 1.

[80] *Id.*, Exh. 2.

[81] *Id.*, Exh. 3.

[82] *Id.*, Exh. 4.

[83] *Id.*, Exh. 5.

[84] Dkt. No. 32 at p. 1.

[85] *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (discussing an unsworn and unauthenticated letter) (per curiam); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir.1991) (discussing an unauthenticated letter).

**IV.     General Applicable Law**

The Rehabilitation Act and the ADA both provide protections for disabled individuals, but apply to different entities.[86] The Rehabilitation Act "prohibits discrimination on the basis of disability by recipients of federal funds,"[87] whereas the ADA applies to public entities, including private employers.[88] Relevant to this case, the Rehabilitation Act is the "exclusive remedy for a federal employee alleging disability-based discrimination."[89] Discrimination claims brought under the Rehabilitation Act are governed by the same standards as claims brought under the ADA.[90] Both acts are judged under the same legal standards and provide for the same remedies.[91]

For summary judgment purposes, disability discrimination claims under the Rehabilitation Act are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.[92] In order to survive summary judgment in a Rehabilitation Act lawsuit, a plaintiff must first establish a *prima facie* case of discrimination. To establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework, a plaintiff bringing a claim under the Rehabilitation Act must show that: (1) he is an individual with a disability; (2) is qualified for the job in question; (3) worked for a program or activity receiving Federal financial assistance or under any program or activity conducted by, among others, the United States Postal

---

[86] *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

[87] *E.E.O.C. v. Chevron Phillips Chem. Co., LP,* 570 F.3d 606, 614 n. 5 (5th Cir.2009).

[88] *Kemp*, 610 F.3d at 234(citing 42 U.S.C. § 12131(1)).

[89] *Dark v. Potter*, 293 Fed. App'x 254, 258 (5th Cir.2008).

[90] *See* 29 U.S.C. § 794(d); *McKay v. Johanns*, 265 Fed. Appx. 267, 268 (5th Cir. 2008); *Cohen v. Univ. of Texas Health Sci. Ctr.*, 557 Fed. Appx. 273, 277 (5th Cir. 2014)("We previously have held that we jointly interpret the ADA and the Rehabilitation Act."); *Frame v. City of Arlington,* 657 F.3d 215, 223 (5th Cir.2011)("The ADA and the Rehabilitation Act generally are interpreted *in pari materia.")(citations omitted).*

[91] *Kemp*, 610 F.3d at 234-35 (citing *Delano-Pyle v. Victoria County, Tex.,* 302 F.3d 567, 574 (5th Cir.2002) ("The language in the ADA generally tracks the language set forth in the [Rehabilitation Act]," and "[j]urisprudence interpreting either section is applicable to both.")).

[92] 11 U.S. 792 (1973); *Milton v. Nicholson*, 256 Fed. Appx. 655, 657 (5th Cir. 2007)(applying the *McDonnell Douglas* framework to a plaintiff's Rehabilitation Act disability discrimination claim).

Service; and (4) an adverse decision was made "solely by reason of her or his disability."[93] Failure to establish a *prima facie* case is fatal.

  If the plaintiff establishes a *prima facie* case, the employer must then show a legitimate, non-discriminatory reason for its adverse employment action.[94] "While an employer need not prove the legitimate reason, it must produce some evidence to support [its reason]."[95] Once an employer articulates such a reason, the burden shifts back to the plaintiff to establish by a preponderance of evidence that the stated reason is merely pretexual.[96]

  The United States Court of Appeals for the Fifth Circuit defines an adverse employment action to be only an "ultimate employment decision," like "hiring, granting leave, discharging, promoting, or compensating."[97] In the context of discrimination claims under the ADA (and by extension, the Rehabilitation Act), the Fifth Circuit has similarly narrowed adverse employment actions to be acts that affect compensation, duties and benefits.[98] Thus, to establish a prima facie case of discrimination, Plaintiff must show that he was subject to an ultimate employment decision, such as hiring, granting leave, discharging, promoting, or compensating. Furthermore, the Fifth Circuit has found that allegations of unpleasant work meetings, verbal reprimands,

---

[93]*McKay v. Johanns*, 265 Fed. Appx. 267, 268 (5th Cir. 2008)(citing 2 U.S.C. § 794(a); *Hileman v. City of Dallas, Tex.*, 115 F.3d 352, 353 (5th Cir. 1997)).

[94] *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

[95] *Id.* (citation omitted).

[96] *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir.2000).

[97] *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir.2007)(citation omitted). In *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 61–65 (2006), the Supreme Court abrogated the "ultimate employment decision" standard for retaliation claims. The Fifth Circuit's jurisprudence on what constitutes as adverse employment actions for *discrimination* claims remains as the "ultimate employment decision" test. The "ultimate employment decision" test controls the Court's analysis of Plaintiff's discrimination claims here, as he has not asserted a retaliation claim.

[98] *McKay v. Johanns*, 265 Fed. Appx. at 268-69 (holding that when determining what is an "adverse employment action" for discrimination claims arising under the ADA and the Rehabilitation Act, courts are apply the "ultimate employment decisions" standard used in the Title VII context)(citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir.2004) (in Title VII discrimination context, "an adverse employment action consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.")).

improper work requests, and unfair treatment do not constitute as adverse employment actions actionable as discrimination. [99]

Again, because the Rehabilitation Act and the ADA are substantively similar, the "definition of disability set forth in the ADA is applicable to claims made under the [Rehabilitation Act]."[100] An individual with a disability is a person who (1) has a physical or mental impairment that substantially limits one or more major life activities of such individual;[101] (2) has a "record" of such an impairment;[102] or (3) is "regarded" as having such an impairment.[103] Courts look to EEOC implementing regulations as guidance when analyzing claims under the ADA and the Rehabilitation Act.[104]

In 2008, the United States Congress passed the ADA Amendments Act of 2008,[105] ("ADAAA") which ushered in significant amendments that widened the definition and coverage of "disability."[106] The Fifth Circuit reflected on these changes:

> In crafting the ADAAA, Congress intended "that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations[ ] and ... that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." To that end, the ADAAA primarily focuses on broadening the definition of "disability" by singling out and superseding *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and *Toyota Motor Manufacturing Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Because those two decisions interpreted congressional intent to narrow the scope of the words "substantially limits" and "major" and the "regarded as" prong in the ADA's definition of disability, Congress added 42 U.S.C. § 12102(2)-(4) to correct that perceived misinterpretation.

---

[99] *King v. Louisiana*, 294 Fed. Appx. 77 (5th Cir. 2008).
[100] *Kemp*, 610 F.3d at 234-35 (citing *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 n. 4 (5th Cir.1995)(noting that the ADA's definition of a disability is "substantially equivalent" to the RA's definition)).
[101] 42 U.S.C.A. § 12102(1)(A)(West); *see also* 29 U.S.C.A. § 705(9)(A)(West).
[102] 42 U.S.C.A. § 12102(1)(B)(West); *see also* 9 U.S.C.A. § 705 (9)(B)(West).
[103] 42 U.S.C.A. § 12102(1)(C)(West); *see also* 29 U.S.C.A. § 705 (9)(B)(West).
[104] *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 655 n.1 (5th Cir. 2003); *Cannon v. Jacobs Field Services N. Am., Inc.,* 813 F.3d 586, 590-91 (5th Cir. 2016) (conducting analysis by using EEOC regulations implementing ADAAA).
[105] Pub.L. No. 110–325, 122 Stat. 3553 (2008).
[106] 42 U.S.C. § 12102(4)(A) (2012) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.").

> Although the text of the ADAAA expresses Congress's intention to broaden the definition and coverage of the term "disability," it in no way eliminated the term from the ADA or the need to prove a disability on a claim of disability discrimination. Even under the ADA as amended by the ADAAA, "[t]o prevail on a claim of disability discrimination under the ADA, [a party] must prove that (1) *he has a disability;* (2) he is qualified for the job; and (3) [the covered entity] made its adverse employment decision [ ] because of [the party's] disability.[107]

The Fifth Circuit recently commented that these amendments "make it easier for people with disabilities to obtain protection under the ADA."[108]

## V.  Discussion

In the instant case, Defendant moves for summary judgment on Plaintiff's disability discrimination claim on the following grounds: (1) as a matter of law, Plaintiff cannot establish that he qualifies as a "disabled" person entitled to protection under the Rehabilitation Act; (2) Plaintiff has not identified, and cannot identify, a single comparable postal service employee who was treated more favorably than he was, and thus cannot establish that he was subject to disparate treatment due to his alleged disability; (3) Plaintiff was not subject to a hostile work environment; and (4) Plaintiff was not denied a reasonable accommodation for his elbow/forearm injury.[109] In response, Plaintiff contests only that (1) he is disabled;[110] (2) was subject to a hostile work environment;[111] (3) and was not provided reasonable accommodations.[112] Plaintiff concedes that he cannot prove a disparate treatment claim.[113]

---

[107] *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013)(footnotes omitted).

[108] *Cannon,* 813 F.3d at 590 (citing 29 C.F.R. § 1630.1(c)(4)("The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of 'disability' in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis.")).

[109] *See* Dkt No. 29 at pp. 2-4.

[110] *See* Dkt No. 31 at pp. 4-8.

[111] *Id.* at ¶ 35.

[112] *Id.* at ¶¶ 24-31.

[113] *Id.* at ¶ 32.

The Court will first consider whether Plaintiff has alleged, or raised a fact issue to establish, that he suffered from an adverse employment action by Defendant. Plaintiff must show that he suffered an adverse employment action to establish a claim for disability discrimination. Plaintiff's second amended complaint fails to address this essential prong. He simply states, in one sentence, that Defendant participated in wrongful employment actions.[114] As noted above, in discrimination claims the Fifth Circuit recognizes only "ultimate employment decisions" as adverse employment actions.

Furthermore, Plaintiff fails also to proffer summary judgment evidence such to create a genuine dispute of material fact on whether he suffered from an adverse employment action. Plaintiff fails to show that he was demoted, discharged, suffered a reduction of pay or was fired. Rather, Plaintiff's amended complaint and deposition testimony suggest that he was subject to a temporary change in duty stations by Vonville on August 9, 2013.

The Court notes that there is no discussion by the parties as to whether the alleged assignment of duties by Vonville, or her conduct in general, constitutes adverse employment actions. Instead, both parties focus on arguing whether Plaintiff is disabled pursuant to the Rehabilitation Act.[115] Assuming *arguendo* that Plaintiff could show he is an individual with a disability who was otherwise qualified to perform this job,[116] Plaintiff fails to allege and demonstrate any adverse employment conduct on Defendant's behalf.  The Court has exhaustively reviewed the second amended complaint and the proffered evidence, but cannot identify any adverse employment action by Defendant.

---

[114] Plaintiff's Second Amended Complaint at ¶ 47.
[115] The Court will not determine whether Plaintiff is disabled for the purposes of this motion, but focuses its analysis here to whether Defendant's actions could constitute as an adverse employment action.
[116] Neither party briefs the Court on whether Plaintiff is an individual who was otherwise qualified to perform his job. Although the Court discusses the failure to establish an adverse employment action in this opinion, it notes that Plaintiff fails to satisfy a vital prong of a *prima facie* case of disability discrimination on this ground as well.

After Plaintiff's April 24, 2013 injury to his right elbow/forearm,[117] Plaintiff's doctor restricted him from performing heavy lifting and bending.[118] Plaintiff was placed on limited duty status and was not allowed to lift packages weighing more than ten pounds.[119] Plaintiff was also instructed to limit the total number of hours he spent lifting items, standing, sitting and bending.[120] Plaintiff complains that Vonville forced him to violate his medical restrictions on August 9, 2013 by instructing him to work in parcels breakdown section,[121] which required him to handle packages of all sizes and weights[122] and distribute them into individual containers.[123]

To the extent Plaintiff implies this change in work duties constitutes an adverse employment action, the Court is unpersuaded. In *Ryburn v. Potter*,[124] the Fifth Circuit held that the plaintiff, a postal service employee, failed to show that she was subject to an adverse employment action when she was temporarily ordered to shift from one mail sorting machine to another. "A temporary shift . . . does not amount to an adverse employment action, especially where, as here, the jobs entailed essentially the same benefits, duties, and responsibilities as the old position."[125]

Like the *Ryburn* plaintiff, Plaintiff temporarily shifted duty stations. Between Plaintiff's April 2013 injury and August 9, 2013, Plaintiff's duties were to sort letters, carry small packages and do minimal light work. [126] On August 9, 2013, Plaintiff was asked to sort mail in the parcels breakdown zone.[127] Earlier that summer, on July 16, 2013, Defendant accommodated for

---

[117] Cavazos Deposition at pp. 45-46.
[118] *Id.* at p. 50, line 25.
[119] *See id.* at pp. 50-54.
[120] *See id.* at p. 57; Cavazos Deposition, Exh. 1.
[121] Cavazos Deposition at p. 61, lines 12-13.
[122] *Id.* at p. 63, line 18.
[123] *Id.* at p. 65, lines 5-11.
[124] 155 Fed. Appx. 102, 107-08 (5th Cir.2005)
[125] *Id.* (citation omitted).
[126] Cavazos Deposition at pp. 59-60.
[127] *Id.* at p. 61.

Plaintiff's April injury by placing him on limited duty status and prohibiting him from lifting packages weighing more than ten pounds.[128] At that time, Plaintiff was instructed by Vonville to not lift heavy packages after signing his modified duty assignment.[129]  When Vonville ordered Plaintiff to work in the parcels breakdown zone, he was not instructed to lift or sort heavy packages. Yet, Plaintiff contends he was ordered to perform tasks he was not supposed to be doing.[130]

Plaintiff has failed to establish that he was subject to an adverse employment action because he has not shown that any of Defendant's actions resulted in an ultimate employment decision such as a discharge, demotion or reduction in pay. Vonville's instruction to Plaintiff on August 9, 2013 was not adverse employment action because there is nothing in the record to suggest that her instruction to work in the parcels breakdown zone was an ultimate employment decision such as a discharge, demotion or reduction in pay. Indeed, it does not appear to the Court that Vonville's instruction to Plaintiff was anything more than a temporary shift in duty posts. Additionally, Plaintiff's temporary shift to the parcels breakdown zone did not amount to an adverse employment action because such a "purely lateral transfer" to another duty post did not amount to a change in benefits, duties or responsibilities.[131] The Fifth Circuit has found a transfer to be purely lateral "where the new position had 'the same job title, benefits, duties, and responsibilities' as the old position."[132]

This is especially pertinent here as Plaintiff's duties in the parcels breakdown zone mirrored his previous responsibilities – sorting and distributing – and Plaintiff's limited duty

---

[128] *See id*. at pp. 50-54.
[129] *Id.* at p. 61, lines 1-3.
[130] *Id.* at p. 64, lines 10-16; Dkt. No. 31 at ¶¶ 24-30.
[131] *Hockman v. Westward Communications, LLC,* 407 F.3d 317, 331 (5th Cir. 2004)(" A purely lateral transfer cannot constitute an adverse employment action.")(citation omitted).
[132] *Id.* (citing *Burger v. Central Apt. Mgmt., Inc.,* 168 F.3d 875, 879 (5th Cir.1999)).

status was not explicitly disrupted. Moreover, Plaintiff has not proffered evidence to create a fact issue on whether this temporary shift to the parcels breakdown zone resulted in changes in job title, compensation, benefits, duties or responsibilities. Furthermore, to the extent Plaintiff contends the comments of Vonville constituted adverse employment actions, unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not raise to the level of adverse employment actions actionable as discrimination. [133] Without showing that Defendant made an adverse employment decision, Plaintiff fails to satisfy a vital prong of the disability discrimination framework under Fifth Circuit jurisprudence. Where a plaintiff fails to prove an essential element of his case, summary judgment is appropriate.[134] Defendant is therefore entitled to judgment as a matter of law on Plaintiff's disability discrimination claim.

## VI.    Holding

After carefully evaluating the motion, response and record, the Court finds Plaintiff has failed to raise a genuine issue of material fact to show that he has suffered from an adverse employment action, a critical prong to establishing a *prima facie* case of disability discrimination. Under these circumstances, and for the reasons states herein, the Court finds summary judgment is warranted.  For the foregoing reasons, the Court **GRANTS** the motion for summary judgment. Accordingly, Plaintiff's claim is **DISMISSED WITH PREJUDICE**. A final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 8th day of July, 2016.

_____
Micaela Alvarez
United States District Judge

---

[133] *King v. Louisiana*, 294 Fed. Appx. 77 (5th Cir. 2008).
[134] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).